*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0179p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

Nos. 05-3698/3854
THE SUPERIOR BEVERAGE CO., INC.,
    *Plaintiff-Appellee/Cross-Appellant,*

 *v.*

SCHIEFFELIN & CO.,
     *Defendant-Appellant/*
     *Cross-Appellee.*

Nos. 05-3698/3787/3854

No. 05-3787
GOODMAN BEVERAGE CO., INC., et al.,
     *Plaintiffs-Appellees,*

 *v.*

SCHIEFFELIN & CO.,
     *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 05-00834; 05-00868—Peter C. Economus, District Judge.

Argued: April 26, 2006

Decided and Filed: May 24, 2006

Before: MERRITT, MARTIN, and McKEAGUE, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** James B. Niehaus, FRANTZ WARD, Cleveland, Ohio, for Appellant. James L. Messenger, HENDERSON, COVINGTON, MESSENGER, NEWMAN & THOMAS, Youngstown, Ohio, Kevin R. McMillan, KABAT, MIELZINER & SOBEL, Beachwood, Ohio, for Appellees. **ON BRIEF:** James B. Niehaus, Jay R. Carson, FRANTZ WARD, Cleveland, Ohio, for Appellant. James L. Messenger, Jerry M. Bryan, Richard J. Thomas, HENDERSON, COVINGTON, MESSENGER, NEWMAN & THOMAS, Youngstown, Ohio, Kevin R. McMillan, Jonathan F. Sobel, KABAT, MIELZINER & SOBEL, Beachwood, Ohio, for Appellees.

1

---------------

**OPINION**

---------------

BOYCE F. MARTIN, JR., Circuit Judge.  Schieffelin & Co., an alcohol distributor, appeals two orders from the district court, in which that court abstained from exercising jurisdiction based on the Supreme Court's decision in *Louisiana Power & Light Co. v. Thibodaux*, 360 U.S. 25 (1959). Superior Beverage has cross-appealed on the same issue.  The district court based its decision on the fact that the litigation is alcohol-related; it determined that Ohio has a complex regulatory scheme dealing with the distribution of alcohol, and that the Twenty-first Amendment grants to the states authority to regulate all alcohol-related matters.  For the following reasons, we REVERSE the order of the district court, and REMAND for further proceedings.

I.

On March 1, 2005, Schieffelin & Co. issued letters to Superior, Goodman, and Mid-Ohio Wines, informing them that it would be terminating their distributorship agreements.  This action by Schieffelin was pursuant to the Alcohol Beverage Franchise Act (ABFA), specifically, Ohio Revised Code Section 1333.85(D), which allows a "successor manufacturer" who acquires the distributorship rights of another manufacturer to terminate a franchise agreement.[1]  On March 28, 2005, Goodman and Mid-Ohio Wines filed an action against Schieffelin & Co., alleging violations of the ABFA in the Court of Common Pleas in Lorain County.  The complaint sought declarative and injunctive relief, as well as monetary damages.  The main allegation of the complaint was that Schieffelin & Co. is not a "successor manufacturer" under R.C. 1333.87, and thus cannot terminate the franchise without just cause.  Superior filed an action against Schieffelin & Co. in federal district court on March 30, 2005.  Superior, Goodwin, and Mid-Ohio Wines obtained temporary restraining orders against Schieffelin & Co.  Schieffelin & Co. subsequently filed a Notice of Removal in the Goodman/Mid-Ohio Wines action to consolidate the proceedings in federal court, and the parties agreed to extend the temporary restraining order until the June 2, 2005 preliminary injunction hearing.

On April 29, 2005, Schieffelin & Co. sent Superior, Goodman, and Mid-Ohio Wines letters explaining its decision to terminate the franchise relationships pursuant to R.C. 1333.85(D). Schieffelin & Co. further explained that it had "just cause" to end the franchise relationship, as is required by Ohio statute for all terminations except those instituted under R.C. 1333.85(D).  In response to this letter, Mid-Ohio Wines and Goodman filed a motion for contempt and to extend discovery relating to Schieffelin & Co.'s "just cause" argument. The district court denied the motion for contempt but agreed to extend filing.

Additionally, the district court requested briefing on whether abstention might be appropriate in this case.  The parties submitted briefs on the issue.  On May 31, 2005, the district court ruled that

-----------------

[1]That section states in pertinent part:

> If a successor manufacturer acquires all or substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another manufacturer, the successor manufacturer, within ninety days of the date of the merger, acquisition, purchase, or assignment, may give written notice of termination, nonrenewal, or renewal of the franchise to a distributor of the acquired product or brand. . . . If the successor manufacturer complies with the provisions of this division, just cause or consent of the distributor shall not be required for the termination or nonrenewal.

R.C. 1333.85(D).

it must abstain from the litigation. The court concluded that R.C. 1333.87 probably vested exclusive jurisdiction in the Ohio courts, but ultimately based its decision on *Thibodaux*, 360 U.S. 25. The court remanded the action filed by Mid-Ohio Wines and Goodman to the Court of Common Pleas in Loraine County, where the Mid-Ohio/Goodman suit originated, and dismissed without prejudice the action filed by Superior because Superior only filed in federal court. This appeal follows.

## II.

We have jurisdiction over the district court's remand order pursuant to 28 U.S.C. § 1291. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 715 (1996). There is complete diversity between the parties, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The district court did not reach the merits of this action in part because it determined that federal courts most likely do not have jurisdiction over actions under Ohio's Alcoholic Beverages Franchise Act.

## III.

### A. Standard of Review

When we review a decision to abstain under *Thibodaux* or *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)[2], we review that decision *de novo*. *See Habich v. City of Dearborn*, 331 F.3d 524, 530 n.2 (6th Cir. 2003) (recognizing tension within the Circuit regarding the proper level of review, and declaring *de novo* review the rule of the Circuit); *MacDonald v. Village of Northport, Michigan*, 164 F.3d 964, 967 (6th Cir. 1999) ("We review the district court's abstention de novo.").

### B. Abstention

The district court declined to exercise jurisdiction, and rather abstained based on *Thibodaux*, 360 U.S. 25. In that eminent domain case, the Supreme Court held that it was appropriate for a federal district court to stay proceedings pending a state court's decision as to whether the city could exercise the power of eminent domain under state law. *Id*. at 29. The Court held that it was proper to stay the action based on abstention because eminent domain "is intimately involved with sovereign prerogative." *Id*. at 28. Relying upon *Thibodaux*, the district court abstained from exercising jurisdiction based on its conclusion that this alcohol-related litigation involved matters exclusively controlled by the state, a determination that it based in large part on the Twenty-first Amendment. "An examination of precedent addressing the import of the Twenty-first Amendment suggests that the federal courts will intervene in this area of state prerogative only where the state's conduct potentially infringes on other constitutional rights." Dist. Ct. Opn. at 20. The district court concluded that because it was being asked to employ its powers as a court of equity, it had the authority to decline to exercise its jurisdiction.

#### 1. Abstention in a Damages Action

First, despite any discussion regarding the propriety of relying on the Twenty-first Amendment to abstain from exercising federal jurisdiction, the district court's order to abstain contradicts *Quackenbush*. 517 U.S. 706. In that case, the Supreme Court held that a federal court's power to abstain "derives from the discretion historically enjoyed by courts of equity." *Id*. at 727-28. Therefore, a federal court's discretion to abstain from exercising jurisdiction does not extend so far as to permit a court to dismiss or remand, as opposed to stay, an action at law. *Id*. at 731.

---

[2]At least one court has recognized that *Thibodaux* abstention is really a variant of *Burford* abstention. *See Grode v. Mutual Fire, Marine and Inland Ins. Co.*, 8 F.3d 953, 957 (3d Cir. 1993). Given the similarity of the two doctrines, we consider the standard of review we have employed in reviewing a district court's decision to abstain under *Burford* to be the appropriate standard for a *Thibodaux* review.

Several courts have expressed doubt that, given *Quackenbush*, a federal court can dismiss an action that includes a claim for damages under abstention principles. *See Yamaha Motor Corp., U.S.A. v. Stroud,* 179 F.3d 598, 603-04 (8th Cir. 1999) (holding that a stay rather than a dismissal is appropriate when "monetary damages are sought in addition to injunctive relief and the federal court is not asked to declare a state statute unconstitutional in order to award damages"); *Pompey v. Broward County*, 95 F.3d 1543, 1552 n.12 (11th Cir. 1996) ("It is doubtful that federal district courts may dismiss claims for damages under abstention principles.").

*MacDonald v. Village of Northport, Mich.*, 164 F.3d 964 (6th Cir. 1999), in which we affirmed a district court's abstention from an action for damages, is not to the contrary. There, homeowners sued a Michigan village and the Michigan State Treasurer regarding the ownership and land use of a platted street, and sought both equitable relief and damages. *Id*. at 966-67. This Court affirmed the district court's order dismissing the case because "the *Burford* abstention doctrine and the Eleventh Amendment created 'grounds together' to dismiss [the] case." *Id*. at 973. The *MacDonald* court explicitly recognized that *Quackenbush* held that "a dismissal based on abstention is appropriate only where the relief sought is equitable or otherwise discretionary." *Id*. at 969 n.4. *See Johnson v. City of Chesapeake, Virginia*, 205 F.3d 1333 (4th Cir. 2000) (unpublished table decision) (reading *MacDonald* as consistent with *Quackenbush*'s prohibition against dismissing damage actions on abstention grounds). Given this reasoning, a claim seeking both equitable damages *and* money damages would not be an appropriate claim for abstention.

In this case, the claim was for both equitable and money damages and, therefore, the district court's order dismissing and remanding the instant action constituted an "abnegation of judicial duty." *Thibodaux*, 360 U.S. at 29. Although the district court concluded that "the relief sought by the plaintiffs is effectively equitable in nature," it is not *exclusively* equitable; the plaintiffs explicitly seek declaratory relief, injunctive relief, and *damages*. In determining whether it had diversity jurisdiction, the district court held that "the declaratory and injunctive relief sought by all plaintiffs is valued at an amount in excess of $75,000.00." The district court's determination that the jurisdictional requirement was met by way of the value of the declaratory and injunctive relief does not detract from the fact that Goodman and Mid-Ohio Wines explicitly requested in their complaint in the Ohio state court action "judgment awarding to Plaintiffs any and all reasonable damages suffered by them and proximately caused by the conduct of the Defendant in violating the Ohio Alcoholic Beverages Franchise Act, O.R.C. Section 1333.82, *et seq*. and the contract between Plaintiff Mid-Ohio and Defendant." Superior also requested legal and equitable relief in its complaint to the district court. Superior, Goodman, and Mid-Ohio all seek equitable relief and monetary damages. Therefore, remanding the case based on abstention was inappropriate.

### 2. *Thibodaux/Burford Abstention and the Twenty-first Amendment*

In the Supreme Court decision of *Burford*, an oil company sued in federal court to attack the validity of an order of the Texas Railroad Commission granting the defendant a permit to drill oil wells.[3] 319 U.S. at 317. The order was part of Texas's regulatory system created to conserve oil and gas. *Id*. at 318. Given Texas's interest in conserving gas and oil and that industry's impact on its entire economy, and because a decision by a federal court would interfere with the complex administrative and judicial system created by that state to address the precise issue, the Supreme Court held that abstention was appropriate. *Id*. at 332. The Court held that in appropriate circumstances, federal courts, "'exercising a wise discretion,' restrain their authority because of 'scrupulous regard for the rightful independence of the state governments.'" *Id.* (quoting *Railroad Comm. v. Pullman Co.*, 312 U.S. 500, 501 (1941)). Similarly, in *Thibodaux*, the Supreme Court held

---

[3] Although the district court did not purport to follow *Burford*, it emphasized that Ohio "has established an intricate regulatory regime to govern the sale and importation of alcoholic beverages within its borders."

that it was appropriate for a district court to stay proceedings pending the interpretation by the state court of a disputed, and never-before addressed, statute involving eminent domain. 360 U.S. at 29. The Supreme Court noted that:

> The special nature of eminent domain justifies a district judge, when his familiarity with the problems of local law so counsels him, to ascertain the meaning of a disputed state statute from the only tribunal empowered to speak definitively – the courts of the State under whose statute eminent domain is sought to be exercised – rather than himself make a dubious and tentative forecast.

*Id.* The Court in *Thibodaux* observed that abstention was particularly appropriate in the context of eminent domain because that area of law "is intimately involved with sovereign prerogative." *Id.* at 28.

Purportedly following *Thibodaux*, the district court held that abstention was appropriate in this instance because the Twenty-first Amendment gave the states the sole authority to regulate matters involving alcohol. The district court noted that under the Twenty-first Amendment and the states' inherent police power, the states possess broad authority to regulate, restrict or ban the sale of alcohol. *Granholm v. Heald*, 544 U.S. 460, 125 S.Ct. 1885, 1902 (2005) ("The aim of the Twenty-first Amendment was to allow States to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use."); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 514 (1996) ("Section . . . 2 [of the Twenty-first Amendment] delegated to the several States the power to prohibit commerce in, or the use of, alcoholic beverages."). The district court further noted that the Twenty-first Amendment vests states with the authority to control issues intertwined with the sale and use of alcohol. *New York Liquor Auth. v. Bellanca*, 452 U.S. 714, 718 (1981) (holding that states have the authority to prohibit or regulate adult entertainment in liquor-licensed establishments). Based on Ohio's authority over alcohol use and distribution within its borders, the fact that Ohio has an "intricate regulatory regime to govern the sale and importation of alcoholic beverages," and the fact that no court had addressed the substantive issues before the district court, it declined to exercise jurisdiction. The court determined that "Ohio's interests in resolving the present cases substantially outweighs the defendant's right to have these matters heard in a federal court."

Schieffelin & Co. and Superior argue that the district court erred in declining to exercise jurisdiction. First, they argue that the thrust of the litigation, whether Schieffelin & Co. is a successor manufacturer under R.C. 1333.87, is not an issue of "substantial public import whose importance transcends the results of the case then at bar," but rather is really nothing more than an ordinary commercial dispute. Schieffelin & Co.'s argument is compelling. This dispute does not involve the licensing of liquor distributors, or the means by which liquor is sold. Rather, the only issue before the district court is whether, under Ohio law, Schieffelin & Co. was justified in terminating the franchise without just cause. The district court's conclusion that abstention is appropriate whenever litigation involving any aspect of alcohol is involved because of the Twenty-first Amendment is misguided.

The district court acknowledged that, despite the Twenty-first Amendment, federal courts have frequently heard cases involving alcohol-related litigation. The district court maintained, however, that federal courts only intervene in alcohol-related litigation when the state's conduct possibly infringes on other constitutional rights. *Granholm*, 544 U.S. 460; *Bellanca*, 452 U.S. 714; *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 122 n.5 (1982); *Craig v. Boren*, 429 U.S. 190, 209 (1976). However, the district court overlooked the numerous instances in which federal courts have exercised jurisdiction in alcohol-related litigation, even in the absence of tension between the Twenty-first Amendment and other constitutional rights. *See Wirtz Corp. v. United Distillers & Vintners North America, Inc.*, 224 F.3d 708, 713 (7th Cir. 2000) (holding that suit was improperly

removed from state tribunal, although approving district court's refusal to abstain from exercising jurisdiction); *Decatur Liquors, Inc. v. District of Columbia*, 384 F. Supp. 2d 58 (D.D.C. 2005) (holding that abstention is unnecessary in a suit brought by liquor licensees claiming that amendment to liquor code was not passed in accordance with procedural requirements of Home Rule Act); *Dayton Heidelberg Distrib. Co., Inc. v. Vineyard Brands, Inc.*, 108 F. Supp. 2d 859 (S.D. Ohio 2000) (litigation involving Ohio's Alcoholic Beverages Franchise Act). As the district court noted, federal courts, including this Court, have actually considered the specific act in question.[4] *Dayton Heidelberg Distrib. Co., Inc. v. Vineyard Brands, Inc.*, No. 01-4061, 74 F. App'x 509 (6th Cir. Aug. 25, 2003); *Dayton Heidelberg.*, 108 F. Supp. 2d 859 (S.D. Ohio 2000); *Jameson Crosse, Inc. v. Kendall-Jackson Winery, Ltd.*, 917 F. Supp. 520 (N.D. Ohio 1996).

The Supreme Court's decision in *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324 (1964), is especially instructive. In that case, a corporation sued to enjoin the New York State Liquor Authority from interfering with its business of selling tax-free bottled wines and liquors to departing international airline travelers. The New York State Liquor Authority had determined that the plaintiff was unlicensed and unlicensable under state law and, as in this case, the resolution of the litigation depended on the interpretation of a state statute. *Id*. at 326-27. The Supreme Court affirmed the district court's decision declining to abstain. "Unlike many cases in which abstention has been held appropriate, there was here no danger that a federal decision would work a disruption of an entire legislative scheme of regulation." *Id*. at 329. The Supreme Court further noted that there, as here, neither party requested that the federal court decline to exercise jurisdiction. *Id.*

The district court determined that abstention was appropriate because many of the issues before the district court have not been addressed by any other court. Specifically, the district court noted that it is unclear whether "damages or other such relief" are available under R.C. 1333.87. Further, the district court noted that no court has addressed the relationship between R.C. 1333.85(D), which allows a successor manufacturer to terminate a distribution franchise absent just cause, and R.C. 1333.85(B)(4), which excludes "a manufacturer's sale, assignment or other transfer of the manufacturer's product or brand to another manufacturer over which it exercises control." Determining whether the transfer of rights to Schieffelin & Co. is governed by R.C. 1333.85(B)(4) or (D) is the heart of this litigation.

That a state statute has not been previously considered by a state court, however, is not a basis for abstention. First, although it is not immediately clear at first blush whether Schieffelin & Co. is a successor manufacturer, R.C. 1333.85 is unambiguous. Furthermore, the scope of the term "successor manufacturer," while certainly important to the parties, is not a particularly important issue of state law. For these reasons, the district court erred in abstaining from exercising its jurisdiction in this case.

## C. Jurisdiction-Granting Statute

Although it ultimately was not the basis for abstention, the district court did note that "it is inclined to interpret section 1333.87 as vesting exclusive jurisdiction in the Ohio courts of common pleas over claims arising from unlawful violations of the Act, particularly where the plaintiffs seek monetary relief." The jurisdictional component of Ohio's Alcoholic Beverages Franchise Act did not, however, provide the basis for the district court's decision, and thus, it is not necessary for this Court to address whether it would have been improper for the district court to dismiss and remand the instant actions based on R.C. 1333.87.

---

[4] The district court abstained despite these cases because "[n]o federal case has addressed the import of [R.C. 1333.87's] apparent grant of exclusive jurisdiction to the state courts." As discussed *infra*, the fact that R.C. 1333.87 grants exclusive jurisdiction to the state court does not undermine the federal courts' diversity jurisdiction.

A state statute cannot divest a federal court of diversity jurisdiction. *Railway Co. v. Whitton,* 80 U.S. (13 Wall.) 270, 286, 20 L.Ed. 571 (1872) ("In all cases, where a general right is thus conferred, it can be enforced in any Federal court within the State having jurisdiction of the parties."). "In determining its own jurisdiction, a District Court of the United States must look to the sources of its power and not to acts of states which have no power to enlarge or to contract the federal jurisdiction." *Grand Bahama Petroleum Co., Ltd. v. Asiatic Petroleum Corp.*, 550 F.2d 1320, 1325 (2d Cir. 1977) (quoting *Markham v. Newport News*, 292 F.2d 711, 713 (4th Cir. 1961)). The district court had jurisdiction over the parties pursuant to Article III, Section 2 of the Constitution and 28 U.S.C. § 1332. "The state cannot preclude a District Court from exercising the judicial power conferred upon the United States in the Constitution and in turn properly delegated to the District Court." *Elgard Corp. v. Brennan Const. Co.*, 157 F.R.D. 1, 2 (D. Conn. 1994) (citing *Railway Co.*, 80 U.S. at 286).

IV.

In sum, a state may not deprive a federal court of jurisdiction merely by declaring in a statute that it holds exclusive jurisdiction. *See Grand Bahama Petroleum*, 550 F.2d at 1325. *Thibodaux* abstention is inappropriate in this case as that type of abstention has only been used in cases involving uniquely state specific subject matter, such as water rights and eminent domain cases. Additionally, this case is not a *Burford* abstention case. For the foregoing reasons, we **REVERSE** the district court's order which remanded the action filed by Goodman/Mid-Ohio Wines and dismissed the action filed by Superior, and **REMAND** the case back to the district court for further proceedings.