RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0127p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JOHN DOE,

        *Plaintiff-Appellant,*

    *v.*

No. 16-5170

UNIVERSITY OF KENTUCKY,

        *Defendant,*

DENISE B. SIMPSON, individually and in her official capacity as Director of the Office of Student Conduct, University of Kentucky; VICTOR HAZARD, in his official capacity as Associate Vice President for Student Affairs and Dean of Students, University of Kentucky,

        *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:15-cv-00300—Joseph M. Hood, District Judge.

Argued: April 27, 2017

Decided and Filed: June 15, 2017

Before: GUY, SILER, and DONALD, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Michael J. Cox, COX LAW, PLLC, Lexington, Kentucky, for Appellant. Bryan H. Beauman, STURGILL, TURNER, BARKER & MOLONEY, PLLC, Lexington, Kentucky, for Appellees. **ON BRIEF:** Michael J. Cox, COX LAW, PLLC, Lexington, Kentucky, E. Douglas Richards, E. DOUGLAS RICHARDS, PSC, Lexington, Kentucky, for Appellant. Bryan H. Beauman, STURGILL, TURNER, BARKER & MOLONEY, PLLC, Lexington, Kentucky, William E. Thro, UNIVERSITY OF KENTUCKY, Lexington, Kentucky, for Appellees.

---

**OPINION**

---

SILER, Circuit Judge.  This case arises out of the federal district court's involvement in an ongoing disciplinary hearing against John Doe[1] at the University of Kentucky.  For the reasons contained herein, we affirm the district court's decision to abstain, reverse the district court's dismissal of the claims against Defendant Denise Simpson, and remand to the district court to stay the case pending conclusion of the university proceedings.

**I.**

After a series of disciplinary hearings, Doe filed suit against the University and Simpson requesting both injunctive and monetary relief.  The hearings were initiated after an unidentified individual lodged a complaint against Doe, alleging that he had engaged in nonconsensual sexual activities with a female student, identified as Student A.  After conducting an investigation, a Hearing Panel was convened.  It found that Doe had violated the Code of Student Conduct and assessed a one-year suspension of Doe.  Doe appealed the ruling to the University Appeals Board ("UAB"), which reversed, finding a violation of Doe's due process rights and the Code of Student Conduct due to Simpson's withholding of critical evidence and witness questions from the Hearing Panel.  The Hearing Panel held a second hearing, and it again found Doe had violated the University's sexual misconduct policy.  Doe appealed, and the UAB reversed the ruling and returned the matter for another hearing.  The UAB found multiple due process errors, including Defendants' improper partitioning of Doe and his advisors from Student A, improperly denying Doe the "supplemental proceeding" described in the Student Code, and finding ex parte communications between Student A, Simpson, and the Hearing Panel regarding sanctions.

A third hearing was scheduled, but before it commenced, Doe filed an action in the district court seeking to enjoin Defendants from conducting the hearing based on alleged unconstitutional flaws in the University's policies, and also asserting due process and equal protection claims under the Constitution, 42 U.S.C. § 1983, and Title IX of the Education

---

[1]This is a fictitious name to protect the party.

Amendments Act of 1972, 20 U.S.C. §§ 1681 *et seq.* Defendants responded by arguing that any constitutional problems would be cured in the third hearing, as new procedures would be in place.[2] Defendants also filed a motion requesting the district court to abstain from providing injunctive relief under *Younger* and to find that Simpson is entitled to qualified immunity and to dismiss the damages claims against her. The district court granted both requests.

## II.

### A.

We review de novo a district court's decision to abstain pursuant to the *Younger* doctrine. *Nimer v. Litchfield Twp. Bd. of Trustees*, 707 F.3d 699, 700 (6th Cir. 2013).

*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity. *Younger v. Harris*, 401 U.S. 37, 44 (1971) ("This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."). The Supreme Court later clarified that *Younger* abstention can apply to cases that are not criminal prosecutions but noted that such applications are narrow and exist only in a few exceptional circumstances. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*") (finding that *Younger* abstention did not apply to state council utility ratemaking procedure as it was essentially a legislative act and not judicial in nature). Regarding the situations to which *Younger* applies, first, *Younger* permits abstention when there is an ongoing state criminal prosecution. *Id.* Next, *Younger* precludes federal involvement in certain civil enforcement proceedings. *Id.* These are proceedings that "are akin to criminal prosecutions." *Sprint*

---

[2]In the third hearing, Doe will receive a new Hearing Panel; a new Hearing Officer will oversee the proceeding; Doe will be able to have the assistance of counsel; Doe may submit questions for cross-examination of Student A to the Hearing Officer; Doe may call his own witnesses and present evidence, and offer any affirmative defenses he chooses; Doe's alleged violation must be proven by a preponderance of the evidence; and Doe may appeal the result if he is not satisfied.

*Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). Finally, *Younger* pertains to "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions," such as contempt orders. *NOPSI*, 491 U.S. at 368 (citations omitted).

Once the proceeding is found to fit into one of the three *NOPSI* categories listed above, the court evaluates the proceeding using a three-factor test laid out in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). *See Sprint Commc'ns, Inc.*, 134 S. Ct. at 593–94 (clarifying that the *Middlesex* factors are only considered by a court after the court decides that one of the *NOPSI* exceptional circumstances is present). The *Middlesex* test states that abstention may occur when three criteria are met: (1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims. *Middlesex*, 457 U.S. at 432-34 (holding that abstention from a state bar disciplinary hearing was proper as the state has traditionally exercised control over the conduct of attorneys, and the "judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice"); *see also Habich v. City of Dearborn*, 331 F.3d 524, 530 (6th Cir. 2003).

Accordingly, the first issue we must decide is whether the university disciplinary hearing meets one of the exceptional circumstances in *NOPSI*. It is clearly not a criminal prosecution or civil proceeding dealing with the judiciary's ability to enforce its orders, so we must determine if the second circumstance, that is, a civil enforcement proceeding akin to a criminal prosecution, applies to the university disciplinary hearings. In proceedings akin to a criminal prosecution, "a state actor is routinely a party to the state proceeding and often initiates the action," and the procedure is initiated to sanction the federal plaintiff. *Sprint Commc'ns, Inc.*, 134 S. Ct. at 592.[3]

---

[3]Although not binding, other courts have held university hearings in varying circumstances qualify as proceedings akin to criminal prosecutions for *Younger* abstention. *See Choudhry v. Regents of the Univ. of Cal.*, No. 16-CV-05281-RS, 2016 WL 6611067, at *3 (N.D. Cal. Nov. 9, 2016) (finding abstention proper in disciplinary action against dean because a state institution initiated the proceedings, a preliminary investigation occurred followed by filing a formal charge, the investigation was designed to sanction Choudhry, and Choudhry faces potential serious consequences); *Sanchez v. Ariz. Bd. of Regents*, No. CV-15-01591-PHX-JAT, 2015 WL 6956288, at *2 (D. Ariz. Nov. 10, 2015) (permitting abstention in student disciplinary hearing when "[e]ach party may offer

Here, the disciplinary proceeding was brought to sanction Doe and could have severe consequences, such as expulsion and future career implications. A state actor, the public University, is a party to the proceeding and initiated the action. Additionally, the case against Doe involved a filed complaint, an investigation, notice of the charge, and the opportunity to introduce witnesses and evidence. Although the proceeding lacks some of the due process protections for a criminal trial, such as having an attorney cross-examine witnesses and being able to subpoena witnesses, that does not destroy the applicability of *Younger* abstention. Doe focuses on the fact that an attorney cannot cross-examine witnesses as a key reason why abstention should not apply, but cross-examination is permitted. Doe could submit questions to a hearing officer who would present them to the witness, and counsel can be present. And we have previously stated that school disciplinary proceedings, while requiring some level of due process, need not reach the same level of protection that would be present in a criminal prosecution. *See Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016). Thus, while the proceeding may lack all the formalities found in a trial, it contains enough protections and similarities to qualify as "akin to criminal prosecutions" for purposes of *Younger* abstention.

Finding that this case fits into one of the *Younger* exceptional circumstances established in *NOPSI*, we next look at the additional *Middlesex* factors. First, does this case qualify as an ongoing state judicial proceeding? A complaint was filed, a hearing was held, and Doe can call witnesses, have an attorney present, submit questions for cross-examination, and present evidence. Although the hearing failed to include every element of due process in a criminal prosecution, it is still adjudicative in nature. *See Fieger v. Thomas*, 74 F.3d 740, 744 (6th Cir. 1996) ("Because the Board is proceeding against Fieger to enforce its Rules of Professional Conduct, it is performing an adjudicative, as opposed to a legislative, function. It therefore, satisfies the first [*Middlesex*] requirement for *Younger* abstention."). Additionally, the University intends to hold a third hearing once this appeal is resolved, so the process is still ongoing. Second, the state has an interest in eliminating sexual assault on its campus and establishing a fair and constitutionally permissible disciplinary system. *See Middlesex*, 457 U.S.

---

an opening statement, call witnesses, introduce documents and exhibits into evidence, and generally cross-examine witnesses who are called to testify"); *Cameron v. Ariz. Bd. of Regents*, No. CV-08-1490-PHX-ROS, 2008 WL 4838710, at *3 (D. Ariz. Nov. 6, 2008) ("State university tenure decisions and subsequent appeals are, indeed, state judicial proceedings as contemplated in *Younger*'s progeny.").

at 432.  Doe's argument that the state lacks any interest simply because the claims were brought under federal law is illogical and has no support.  The final factor is whether Doe has an adequate opportunity to raise his constitutional claims in the university proceeding.  *See id.*  Doe has raised his constitutional claims twice already, and the UAB has overturned the Panel's decisions.  Clearly, there is an avenue available to raise such claims, and the UAB has not rubber-stamped the Panel's decision but has carefully examined it for defects.  Doe can appeal after the third hearing, which will involve more protections and procedures, if he believes the hearing still suffers from constitutional error, and he may raise his claims again in federal court once the proceedings have concluded.  While the previous system had its flaws, and the University has recognized and attempted to correct this, Doe was still able to raise his constitutional challenges, and he will continue to be able to do so under the new system.  As such, we find that the *Middlesex* factors are met and abstention applies.

Even if abstention is warranted, however, a plaintiff still has the opportunity to show that an exception to *Younger* applies.  These exceptions include bad faith, harassment, or flagrant unconstitutionality of the statute or rule at issue.  *Fieger*, 74 F.3d at 750.  For the flagrant unconstitutionality exception, "a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."  *Younger*, 401 U.S. at 53-54 (quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941)).  That is not the case here.  Showing such flagrant unconstitutionality is a high bar, and the University's policy does not reach that level.  Doe's argument that in practice the policy was applied in an unconstitutional manner fails as there must be facial unconstitutionality as well as in application.  Furthermore, although the UAB did find that Doe was denied his due process rights, that was because Defendant Simpson was not following the policy, not because the policy itself was flagrantly unconstitutional.  As such, Doe cannot meet this exception.

Doe has also failed to show a pattern of bad faith prosecution and harassment against him.  It is true that the UAB has twice found problems with the hearings, but Doe's conclusory statements that the University is using him as an example is not enough to show harassment.  A complaint was filed and an investigation occurred, and the University will use improved policies

in the next hearing. As mentioned above, the hearings have not been ideal, but that does not amount to bad faith and harassment, especially as Doe has succeeded on appeal. The court in *Younger* discussed *Dombrowski v. Pfister*, 380 U.S. 479 (1965), as an example of the harassment exception, because that case involved repeated threats by prosecutors designed to discourage individuals from asserting their constitutional rights. *Younger*, 401 U.S. at 48. Those types of threats, or other similar actions, are not alleged here, and as such, the district court was correct in finding *Younger* abstention precluded its involvement in the case.

**B.**

Doe next claims that the district court erred in finding that Defendant Simpson was entitled to qualified immunity and subsequently granting Defendants' motion to dismiss after it had decided to abstain from the case. We review a district court's dismissal of claims pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008).

When deciding whether to rule on the motion to dismiss, the district court looked to *Meyers v. Franklin County Court of Common Pleas*, 23 F. App'x 201, 205-06 (6th Cir. 2001), and stated that the appropriate action after deciding to abstain was to stay the case, rather than decide and dismiss the claims. However, citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), the district court chose to decide the immunity issue at the earliest possible stage of the litigation. The purpose of *Younger* abstention is to promote equity and comity and allow state officials to proceed with cases uninterrupted by the federal courts. *Younger*, 401 U.S. at 43-46. As such, albeit not in the context of qualified immunity, we have consistently held that if a court abstains under *Younger*, it should stay any claim for damages rather than evaluate the merits and dismiss the case. *See Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075 (6th Cir. 1998) (holding that when abstaining from damages claims, the proper course of action is a stay of the claim, rather than dismissal); *see also Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 721 (1996); *Meyers*, 23 F. App'x at 206 (finding that when claim for injunctive relief was dismissed due to *Younger* abstention, the proper course of action was to stay, rather than dismiss, the

related damages claim). Defendant Simpson fails to show this procedure is inapplicable in cases involving qualified immunity.[4]

The concerns that support determining qualified immunity at the earliest stage of litigation are not present here. As qualified immunity is "immunity from suit rather than a mere defense to liability," it becomes essentially meaningless if a case wrongfully goes to trial. *Pearson*, 555 U.S. at 231. To save the costs associated with discovery and ongoing litigation, courts have generally held that such immunity be determined early in a proceeding. *Id*. In this case, however, there are no such concerns. As the district court abstained, there will be no discovery or ongoing litigation costs in the federal court. Nor will Defendant Simpson be forced to undergo a trial or waste extensive time and resources when she ultimately may be entitled to qualified immunity. The disciplinary proceedings will continue at the University level, and as Simpson is no longer involved, she will not be harmed by waiting for the proceedings to be concluded at the state level. Once the hearings are complete, Doe may continue with his federal claims, if he chooses, and the district court can evaluate qualified immunity early in that point of the litigation. As a qualified immunity determination involves analyzing important and difficult issues in the case, finding that it applies after choosing to abstain defeats the purpose of allowing the state proceedings to go forward without interference from the federal courts.

The University also argues that the claims against Defendant Simpson are backwards-looking, and thus, may be determined prior to resolution of all issues. That the claims are not for prospective relief is not determinative. As the district court has rightfully abstained from the case, the University will continue with its hearings. We are not able to assess the full measure of potential damages or evaluate the extent of the harm when another hearing will soon occur. Depending on what happens at the next hearing, Doe's federal court claim and alleged damages may change. Hopefully, Doe will face a fair proceeding. If not, or if he argues that the harm from the previous hearings still exists regardless of the outcome, he can file an amended

---

[4]Defendants' citation to *Summers v. Leis*, 368 F.3d 881 (6th Cir. 2004), fails to support their argument. In that case, we stated that "[a] district court's determinations of whether it must abstain under *Younger* and whether to grant qualified immunity require the application of separate and distinct legal standards. It is not necessary to decide whether the district court should have abstained under *Younger* in order to review whether it applied the appropriate legal standard and analysis in denying qualified immunity to Sheriff Leis." *Id*. at 889-890. *Summers* differs in a significant way from this case as the district court in *Summers* did not abstain, and we were determining whether we should analyze that decision not to abstain.

complaint based on the final order(s) of the Hearing Panel and UAB, and qualified immunity and its relation to what due process he should be afforded can then be decided. Even though Defendant Simpson is no longer involved with the hearings, calculating the damages associated with the process is premature until the process has concluded. Only at that point can the parties and the court assess the constitutionality of the procedures and the damages, if any, caused by the proceedings as a whole.

**Affirmed in part. Reversed and remanded in part.**